WILLIAM BREWSTER COMPANY, INC., PETITIONER v. THE TOWN OF HUNTERSVILLE, THE TOWN OF HUNTERSVILLE BOARD OF COMMISSIONERS; THE HONORABLE KIM PHILLIPS, MAYOR OF THE TOWN OF HUNTERSVILLE, IN HER OFFICIAL CAPACITY; AND JILL SWAIN, TIM BRESLIN, SARAH McAULAY, BRIAN SISSON AND JEFF PUGLIESE, MEMBERS OF THE TOWN OF HUNTERSVILLE BOARD OF COMMISSIONERS, IN THEIR OFFICIAL CAPACITIES, RESPONDENTS

No. COA02-1264

(Filed 4 November 2003)

### Zoning— sketch plan—compliance with zoning and subdivision ordinances

The trial court erred by determining that respondent town board's decision to deny petitioner's sketch plan proposing 145 single-family detached houses constructed on the pertinent property was supported by competent, material, and substantial evidence and thus the trial court's decision was arbitrary and capricious, because: (1) plaintiff presented competent, material, and substantial evidence that it met the requirements of the pertinent zoning and subdivision ordinances, thus establishing a prima facie case of entitlement to approval; and (2) the town board did not present substantial evidence contra.

Appeal by petitioner from judgment entered 28 June 2002 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 August 2003.

*Kennedy Covington Lobdell & Hickman, L.L.P., by John H. Carmichael, for petitioner-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Anthony Fox, and Parham, Helms, Harris, Blythe & Morton, by Robert B. Blythe, for respondents-appellees.*

MARTIN, Judge.

On 16 July 2001, the William Brewster Company, Inc. (hereinafter "Brewster") submitted to the Town of Huntersville (hereinafter "Huntersville") an application and subdivision sketch plan for approval of a subdivision, a 58.51 acre tract of land, located in Mecklenburg County. The property, to be known as "Riverdale," was zoned as an Open Space District.

The sketch plan proposed 145 single-family detached houses constructed on the property at a gross density of 2.48 houses per acre. Although the planning director noted that he would prefer to see a lower density for the property, he nonetheless recommended approval since the sketch plan met the technical requirements of the Subdivision Ordinance.

On 18 December 2001, the Town Planning Board met to hear the recommendation of the Planning Director and discuss the proposed development. The Board expressed concern that the proposed development, in which the lot sizes were approximately 6,000 square feet, was not consistent with the surrounding development of Cashion Woods, a new subdivision in the preliminary plat stage of development with 20,000 square foot lots. In addition, the Board questioned whether the rural open space provided was consistent with the provisions of the Zoning Ordinance. The Planning Board voted seven to one to recommend denial of the sketch plan because the proposed area did not conform with neighboring development and because the proposed area was not consistent with the intent of the Open Space zoning district. In addition, the entrance to the proposed subdivision was located on Beatties Ford Road, which already had traffic capacity problems and water quality issues.

The Town Board met on 22 January 2002 and heard extensive testimony regarding the proposed sketch plan. The Planning Director informed the Town Board that the Planning Board had recommended denial of the sketch plan. He explained that although the subdivision complied with the density standards under the Zoning Ordinance, he preferred a lower density in light of the surrounding developments. Because changes had been made to the sketch plan since the 18 December 2001 meeting of the Planning Board, the Town Board unanimously agreed to defer the decision until the 18 February 2002 meeting.

At the 18 February 2002 meeting, after hearing testimony, the Town Board unanimously voted to deny approval of the sketch plan. The findings of fact upon which denial was based included:

(1) The Zoning Ordinance did not state that the Town Board of Commissioners must approve a proposed subdivision sketch plan;

(2) The property did not comply with the requirements of the Huntersville Subdivision Ordinance, Sections 6.200.1, Consistency and 6.200.2, Conformity;

(3) "There are no adopted public plans and/or policies within more than 1.2 miles of the proposed Riverdale subdivision" where 90 percent of the lots are as narrow as 61 feet.

(4) The Riverdale subdivision does not comply with the Huntersville Zoning Ordinance, Item 3.2.1, which requires a minimum lot size of 20,000 square feet and a minimum lot width of 90 feet.

(5) The subdivision sketch plan overpopulated and violated the historical and rural character of the Beatties Ford Road area.

On 4 March 2002, the Town Board voted to affirm the denial of the Riverdale subdivision, excluding the violation of Item 3.2.1 of the Zoning Ordinance as support for denial.

On 15 March 2002 Brewster petitioned the Mecklenburg County Superior Court for writs of certiorari and mandamus alleging, *inter alia*, that the Town Board's decision to deny the application was not supported by competent, material and substantial evidence, that the decision was arbitrary and capricious and that it was erroneous. After a hearing, the superior court entered an order in which it determined that the Town Board's decision was supported by competent, material and substantial evidence in the whole record, was not arbitrary and capricious and was without error of law. Brewster appeals.

---

Petitioner first alleges the trial court erred in determining that the Town Board's decision to deny the sketch plan was supported by competent, material and substantial evidence and was not arbitrary and capricious. We agree.

In reviewing a superior court order entered upon review of a zoning decision by a municipality, the appellate court must determine "not whether the evidence before the superior court supported that court's order[,] but whether the evidence before the Town Council supported the Council's action." *Ghidorzi Constr., Inc. v. Town of Chapel Hill*, 80 N.C. App. 438, 440, 342 S.E.2d 545, 547 (1986). When a petitioner alleges that the decision was not supported by substantial evidence or was arbitrary and capricious, the reviewing court applies the whole record test. *Tate Terrace Realty Investors v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997). The court must examine all competent evidence to determine if the record supports the board's findings and conclusions. *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 26, 539 S.E.2d 18, 22

WILLIAM BREWSTER CO. v. TOWN OF HUNTERSVILLE

[161 N.C. App. 132 (2003)]

(2000). "[A] decision may be reversed as arbitrary and capricious only where the petitioner establishes that the decision was whimsical, made patently in bad faith, indicates a lack of fair and careful consideration or 'fail[s] to indicate any course of reasoning and the exercise of judgment . . . .' " *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjustment,* 132 N.C. App. 465, 468-69, 513 S.E.2d 70, 73 (1999) (citation omitted).

In its order, the superior court recited that it had used the whole record test to determine that the findings of fact and the decision made by the Town Board are supported by competent, material and substantial evidence. Thus, the trial court exercised the proper standard of review.

The Huntersville Subdivision Ordinance, Section 3.300, states: "[T]he Town Board may approve the request, deny the request, or approve the request with conditions relating to the intent and standards of this ordinance." Further, nothing in the Subdivision Ordinance requires the Town Board to approve a plan recommended for approval by the Planning Director. Therefore, the Town Board had discretion to deny the application if conditions of either the Subdivision Ordinance or the Zoning Ordinance were not met.

Petitioner claims that by producing competent, material and substantial evidence of the requirements of the Zoning and Subdivision Ordinances, they have established a prima facie case of entitlement and thus, the application should be approved as a matter of right. *Humble Oil & Ref. Co. v. Bd. of Aldermen,* 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974). On the other hand, an application may be denied if there are "findings contra which are supported by competent, material, and substantial evidence appearing in the record" *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. North Carolina Fire Ins. Rating Bureau,* 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

Petitioner met the technical requirements of the Open Space District as required by the Huntersville Zoning Ordinance, Section 3.2.1, as follows:

(1) There was frontage on a public street for all lots,

(2) The proposed density of 2.48 dwelling units per acre was less than the maximum density requirement of 2.5 dwelling units per acre, and

(3) The subdivision exceeded the qualified open space requirement of 15%.

In addition, the open space district did not require a minimum lot size and the subdivision complied with all Surface Water Improvement and Management (S.W.I.M) stream buffers and watershed requirements. However, Section 3.2.1(d)(8) of the Zoning Ordinance required all major subdivisions to meet the requirements of the Huntersville Subdivision Ordinance.

In the 18 February 2002 meeting, the Town Board concluded Riverdale did not comply with the consistency and conformity requirements of the Huntersville Subdivision Ordinance. Section 6.200.1 requires consistency of the proposed subdivision with the most recently adopted public plans and policies for the area. Public plans and policies are final planning documents on file in the offices of the Town of Huntersville. In its findings of fact, the Town Council determined that there were no adopted public plans or policies within 1.2 miles of the Riverdale subdivision. Although the lot sizes were much smaller and the proposed density was higher than in the surrounding areas, without adopted public plans and policies for these areas, denial of the subdivision for lack of consistency was not based on competent, material and substantial evidence.

Petitioner further asserts that it met the requirements for conformity. Section 6.200.2 of the Subdivision Ordinance, requires that "[i]n areas with established development, new subdivisions should be planned to protect and enhance the stability, environment, health and character of neighboring areas." The findings of fact determined that Riverdale, with lot sizes much smaller than the 10,000 square foot lots in the Beatties Ford Road area, did not conform with the established area. However, most of the discussion in the town board meetings centered on conformity with Cashion Woods, not Beatties Ford Road. Cashion Woods, a subdivision in the preliminary stages of development, does not meet the requirement for conformity with "established development." The only specific discussion of lot sizes in the Beatties Ford Road area was during the 22 January 2002 meeting of the Town Board when Frank Jacobus, representing Brewster, noted that of the homes located on Beatties Ford Road nearest to Riverdale, six or seven were mobile homes on older, larger lots, with square footage between 800 and 1,400 square feet. Although relevant, this evidence alone is not adequate to support a conclusion that Riverdale does not conform to the surrounding areas. The findings further found that the Riverdale subdivision "overpopulates and violates the historical and

rural character of the Beatties Ford Road area." There is no evidence contained in the record to support this conclusion.

Brewster presented competent, material and substantial evidence that they met the requirements of the Zoning and Subdivision Ordinances; thus, they established a prima facie case of entitlement to approval. Because the Town Board did not present substantial evidence contra, the Town Board's decision to deny the subdivision sketch plan was not supported by competent, material and substantial evidence, *See Clark v. City of Asheboro*, 136 N.C. App. 114, 524 S.E.2d 46 (1999), *Woodhouse v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 211, 261 S.E.2d 882 (1980), and was arbitrary and capricious. The decision of the Superior Court must be reversed, and this matter remanded for entry of an order requiring the town to approve petitioner's application.

Reversed.

Judges McCULLOUGH and LEVINSON concur.